## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

BIMBO BAKERIES USA, INC.,

                                        Civ. No.  25-1719 (JRT/DJF)

             Plaintiff,

v.

                                **MEMORANDUM OPINION AND ORDER**
BAKERY, CONFECTIONARY, TOBACCO  **GRANTING DEFENDANTS' MOTION FOR**
WORKERS AND GRAIN MILLERS UNION     **JUDGMENT ON THE PLEADINGS**
TWIN CITIES LOCAL 22,

             Defendant.

---

Bruce J. Douglas and Paola K. Maldonado, **OGLETREE DEAKINS NASH SMOAK & STEWART, P.C.**, 225 South Sixth Street, Suite 1800, Minneapolis, MN 55402, for Plaintiff.

Justin D. Cummins, **CUMMINS & CUMMINS, LLP**, 920 Second Avenue South, Suite 1245, Minneapolis, MN 55402, for Defendant.

Plaintiff Bimbo Bakeries USA, Inc. ("Bimbo") initiated this action against Bakery, Confectionary, Tobacco Workers and Grain Millers Union Twin Cities Local 22 ("Union") seeking to vacate an arbitration award that was entered against Bimbo and in favor of the Union.  Bimbo alleges, among other things, that the arbitrator exceeded the authority granted to him under the collective bargaining agreement ("CBA") and that he effectively modified the agreement's terms by supposedly drawing on Minnesota's newly enacted Earned Safe and Sick Time law.  The Union now moves for judgment on the pleadings, arguing that the arbitration award should be upheld.  After careful consideration, the

Court will grant the Union's Motion for Judgment on the Pleadings and will dismiss the Complaint because the arbitrator did not exceed his authority, the arbitrator's decision draws its essence from the CBA, and the arbitration award does not violate public policy.

## BACKGROUND

### I.   FACTUAL BACKGROUND

Bimbo produces and distributes bakery goods, and the Union is a labor organization that represents certain Bimbo employees.  (*See* Compl. ¶¶ 4–6, Apr. 25, 2025, Docket No. 1.)   Bimbo and the Union were parties to a collective bargaining agreement ("CBA"), effective from February 14, 2021, through February 14, 2026.  (*Id.* ¶ 6, Ex. A.)

Article 6 of the CBA obligates Bimbo to provide a certain amount of vacation benefits each year to each bargaining unit employee.  (*Id.*, Ex. A at 10–12.)  Sections 2 and 3 of Article 6 set out a detailed schedule showing how employees accrue vacation time, with the accrual rate based on each employee's years of service.  (*Id.*)

In December 2023, Bimbo introduced a policy intended to ensure compliance with Minnesota's new Earned Sick and Safe Time law ("ESST").[1]  (*Id.* ¶ 7.)  Earlier that same month, Bimbo emailed the proposed policy to the Union's president, Walter Borgan.  (*Id.* ¶ 8.)   After review, the Union objected to the policy based on its interpretation of Minnesota ESST statute, urging Bimbo not to adopt it.  (*Id.* ¶¶ 8–9. Exs. C & D.)

---

[1] Minn. Stat. §§ 181.9445–181.9448.

On January 2, 2024, the Union filed a grievance, arguing that Bimbo was "unilaterally reducing the amount of vacation time guaranteed by the collective bargaining agreement to bargaining unit employees by converting . . . the vacation time earned by those employees to sick and safe time that Minnesota law separately requires the Employer to provide to all employees, not only to bargaining unit employees." (*Id.* ¶ 10.)  The Union alleged that Bimbo's "course of conduct" violated Article 1 and Article 6 of the CBA. (*Id.*)  Bimbo denied the grievance. (*Id.* ¶ 11.)  The Union then moved to arbitrate the grievance and filed a request for arbitration with the Federal Mediation and Conciliation Service. (*Id.* ¶ 12.)  The parties jointly selected Jeffrey W. Jacobs as the arbitrator. (*Id.* ¶ 13.)

In October 2024, before the scheduled arbitration hearing, Bimbo rescinded the December 2023 policy and adopted a new policy (the "October 2024 policy"). (*Id.* ¶¶ 14–15.)  The Union did not object to the October 2024 policy as it apparently addressed the Union's objections to the December 2023 policy. (*Id.* ¶ 16.)  Under the December 2023 policy, employees were required to use their vacation hours (that is, their paid time off) if they wished to be paid for ESST absences. (*Id.* ¶ 8, Ex. B ([A]ll existing employees may designate up to forty-eight (48) hours of his or her annual contractual paid time off as ESST leave every calendar year.").)  In contrast, under the October 2024 policy, Bimbo provided ESST hours to employees without sufficient leave to satisfy the ESST statutory

requirements, but Bimbo did not provide any additional ESST time to employees with "at least 80 hours of paid vacation or other paid personal time off[.]"  (*Id.* ¶ 15, Ex. E.)

After Bimbo adopted the October 2024 policy, Bimbo notified the Union's counsel and the arbitrator of the policy change, argued that the policy change rendered the grievance moot, and objected to further arbitration proceedings.  (*Id.* ¶ 17.)  Bimbo's notice stated that it "intend[ed] to make whole any affected employees."  (*Id.*, Ex. F.)  The Union objected to any postponement of the arbitration hearing.  (*Id.* ¶ 18, Ex. G.)

On October 26, 2024, the arbitrator denied Bimbo's request to cancel the arbitration hearing, and the arbitration hearing was held on October 28, 2024.  (*Id.* ¶¶ 19, 21.)  Bimbo appeared at the hearing and noted its objections for the record.  (*Id.* ¶ 20.)

On January 28, 2025, the arbitrator sustained the Union's grievance, issuing a 32-page decision and award.  (*Id.* ¶ 22, Ex. I.)  The arbitrator concluded:

> The Employer's action here constituted a violation of the CBA and the Employer is ordered to cease and desist any further efforts to thwart the clear meaning of the CBA, is further ordered to comply with the CBA fully going forward, and to provide make-whole relief, including without limitation the restoration of all vacation benefits the Employer converted into paid sick and safe time concerning each affected bargaining unit employee and to make any affected employees whole as the result of the course of conduct at issue here.  The arbitrator will retain jurisdiction to resolve any issues regarding this award.

(*Id.*, Ex. I at 31.)

-4-

## II.    PROCEDURAL HISTORY

On April 25, 2025, Bimbo filed a Complaint under Section 301 of the Labor Management Relations Act of 1947 (29 U.S.C. § 185) seeking to vacate the arbitration award.  (Docket No. 1.)  The Union filed its answer and raised a counterclaim seeking to enforce the award.  (Answer and Countercl., June 2, 2025, Docket No. 7.)  On July 1, 2025, the Union filed a motion for judgment on the pleadings.  (Docket No. 11.)  Discovery was stayed pending resolution of the Union's motion.  (Order, Aug. 18, 2025, Docket No. 31.)

## DISCUSSION

## I.    STANDARD OF REVIEW

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed . . . a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  The Court analyzes a motion for judgment on the pleadings under the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *See Ashley Cnty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).

To survive a motion for judgment on the pleadings, the complaint must contain sufficient factual allegations to state a plausible claim for relief.  *See Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009).  A district court accepts as true all facts pleaded by the nonmoving party and draws all reasonable inferences from the pleadings in favor of that party.  *Corwin v. City of Independence*, 829 F.3d 695, 699 (8th Cir. 2016).  Merely reciting the elements of a cause of action is insufficient, and legal conclusions asserted in the complaint are not entitled to the presumption of truth.  *Ashcroft v. Iqbal*, 556 U.S.

-5-

662, 678 (2009).  When deciding a motion for judgment on the pleadings, a district court refrains from considering matters beyond the pleadings, other than certain public records and "materials that do not contradict the complaint, or materials that are necessarily embraced by the pleadings."  *Saterdalen v. Spencer*, 725 F.3d 838, 841 (8th Cir. 2013) (internal quotation marks omitted).

## II.     ANALYSIS

Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, provides the basis for actions to vacate arbitration awards.  Judicial review of an arbitration award is limited.  *CenterPoint Energy Res. Corp. v. Gas Workers Union, Loc. No. 340*, 920 F.3d 1163, 1166 (8th Cir. 2019).  "It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his."  *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 599 (1960).  Even if the court believes that the arbitrator committed a serious error, the arbitration award will be upheld "[s]o long as the arbitrator is 'even arguably construing or applying the contract and acting within the scope of his authority[.]'"  *Star Tribune Co. v. Minn. Newspaper Guild Typographical Union*, 450 F.3d 345, 348 (8th Cir. 2006) (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)).  A court may vacate an arbitration award only if the award does not "draw its essence from the contract" but instead "reflect[s] the arbitrator's own notions of industrial justice."  *United Paperworkers*, 484 U.S. at 38.

The Union argues that the arbitration award should be enforced because the award draws its essence from the CBA and that Bimbo's attempt to relitigate the merits should be rejected.  In response, Bimbo contends that the Union's motion for judgment on the pleadings should be denied at least because (1) the arbitrator exceeded his authority under the CBA by proceeding with the arbitration despite Bimbo's objections that the grievance was moot; (2) the arbitration award does not draw its essence from the CBA; (3) the arbitrator's award violates public policy; and (4) the arbitrator exceeded his authority by purporting to exercise continuing jurisdiction over the case.  The Court will begin with the mootness issue and then turn to the remaining arguments.

### A.      Mootness

Bimbo argues that the Union's grievance was mooted by Bimbo's rescission of the December 2023 policy and that because the grievance was moot, the arbitrator exceeded his authority by proceeding with the arbitration.  According to the Union, the question of mootness is for the arbitrator to decide, and moreover, the Union's grievance was not moot because Bimbo's conduct constituted on "ongoing" violation of the CBA.

This Court may decide two gateway questions of arbitrability.  *Int'l Ass'n of Bridge, Structural, Ornamental & Reinforcing Ironworkers, Shopman's Loc. 493 v. EFCO Corp. & Constr. Prods., Inc.*, 359 F.3d 954, 956 (8th Cir. 2004).  First, the Court may determine whether a valid arbitration agreement exists.  *Id.*  And second, the court may decide "any question as to whether a valid arbitration agreement applies to the subject matter at hand[.]"  *Id.*  Aside from these two questions, "procedural questions which grow out of

-7-

the dispute and bear on its final disposition" are for the arbitrator to decide, not the Court. *Id.* (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). The Eighth Circuit has noted that procedural issues reserved for the arbitrator include "allegations of waiver, delay, or a like defense to arbitrability." *Id.* (citation modified).

The question here is whether mootness constitutes a procedural issue that must be decided by the arbitrator. While the Eighth Circuit has not addressed this issue, mootness is generally treated as a matter of procedural arbitrability reserved for the arbitrator. *See, e.g.*, *Oil, Chem. & Atomic Workers Int'l Union Loc. 5-391 v. Conoco, Inc.*, 64 F. App'x 178, 184–85 (10th Cir. 2003) (concluding that mootness is a question for the arbitrator); *Loc. Union No. 370 of Int'l Union of Operating Eng'rs v. Morrison-Knudsen Co.*, 786 F.2d 1356, 1358 (9th Cir. 1986); *W. Automatic Mach. Screw Co., Div. of Standard Screw Co. v. Int'l Union, United Auto., Aircraft & Agric. Implement Workers of Am.*, 335 F.2d 103, 106 (6th Cir. 1964). The Court thus considers mootness to be an issue of procedural arbitrability, and will defer to the arbitrator's conclusion that the Union's grievance was not moot.

Bimbo also asserts that the arbitrator's decision to proceed with the arbitration effectively abrogated Article 14, Section 1, Step 4 of the CBA, which provides that "[o]nly one (1) grievance may be submitted to the arbitrator at a time unless mutually agreed by the parties." (Compl. ¶ 6, Ex. A at 18.) Accepting this argument would require the Court to find that the arbitrator wrongly concluded that the grievance was still live. But, as

discussed above, the Court will defer to the arbitrator's conclusion that the grievance was still live because that determination was a matter of procedural arbitrability.  The Court declines to find that the arbitrator wrongly concluded that the grievance was still live, and, therefore, concludes that the arbitrator addressed only one grievance and did not violate Article 14 of the CBA .

In sum, the question of whether a grievance is moot is a question for the arbitrator. Because the arbitrator determined that the grievance was live, the arbitrator did not exceed his authority by proceeding with the arbitration.[2]

**B.      The "Draws Its Essence" Issue**

The primary dispute in this case is whether the arbitration award entered in favor of the Union draws its essence from the CBA.  Courts refuse to enforce an arbitration award only if the award does not draw its essence from the parties' underlying contract.

---

[2] Even if the Court could opine on mootness issue, this matter was not mooted by Bimbo's rescission of the December 2023 policy.  The exhibits attached to Bimbo's complaint show that both the December 2023 and October 2024 policies presented the issue of whether Bimbo was converting employees' vacation time to ESST in violation of the CBA's terms.  Therefore, it was reasonable for arbitrator to frame the mootness issue around Bimbo's "course of conduct" rather than limiting its view of the Union's grievance to its disagreement with the December 2023 policy. (*See, e.g.*, Compl., Ex. I at 8.)  Though not mentioned by either party, the arbitrator's decision is consistent with the established "voluntary cessation" exception to the mootness doctrine, which provides that a party's voluntary cessation of an unlawful practice does not render a case moot. *See Wright v. RL Liquor*, 887 F.3d 361, 363 (8th Cir. 2018) (noting that voluntary cessation exception applies if "the defendant [is] free to return to its wrongful behavior").  Here, the record suggests that Bimbo attempted to moot the Union's grievance by changing its policy on the eve of the arbitration hearing.  Had the arbitrator concluded that the grievance was moot, nothing would have prevented Bimbo from reinstating its December 2023 policy.  Therefore, the arbitrator's decision is consistent with the voluntary cessation doctrine.

*Int'l Bhd. of Elec. Workers, Loc. Union No. 545 v. Hope Elec. Corp.*, 380 F.3d 1084, 1100 (8th Cir. 2004). In determining whether the arbitrator exceeded his authority, the contract "must be broadly construed with all doubts resolved in favor of the arbitrator's award." *Id.* (citation omitted). But the arbitrator cannot "ignore or abandon the plain language of the CBA, which would in effect amend or alter the agreement without authority." *Amalgamated Transit Union Loc. No. 1498 v. Jefferson Partners*, 229 F.3d 1198, 1200 (8th Cir. 2000) (citation omitted).

The party seeking to vacate the award must show that the arbitrator based "his decision on some body of thought, or feeling, or policy, or law that is outside the contract." *Centerpoint Energy*, 920 F.3d at 1167 (citation omitted) ("The arbitrator's disregard of the contract must be clear: that an opinion includes an ambiguity that permits the inference that the arbitrator may have exceeded his authority is not a reason for refusing to enforce the award." (internal quotation marks omitted)). "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority," the court may not vacate the award even if the court believes the arbitrator "committed serious error[.]" *Boehringer Ingelheim Vetmedica, Inc. v. United Food & Com. Workers*, 739 F.3d 1136, 1140 (8th Cir. 2014).

Bimbo argues that the arbitrator's decision does not draw its essence from the CBA because he based his decision at least in part on Minnesota's ESST statute. To analyze

Bimbo's arguments, the Court will briefly outline the arbitrator's opinion and then address whether the award draws its essence from the CBA.

### 1. The Arbitrator's Award

The arbitrator began by framing the issue as whether Bimbo violated the CBA "by unilaterally reducing the amount of vacation benefits guaranteed by Article 6 of the CBA" by "convert[ing] those vested vacation benefits into paid sick and safe time the Employer must separately provide under the ESST law[.]" (Compl. ¶ 22, Ex. I at 2.)  The arbitrator then identified and quoted the relevant CBA provisions (*id.*, Ex. I at 3–5) and cited the relevant portions of the ESST statute, including Minn. Stat. § 181.9445 (Definitions), § 9446 (Accrual of ESST), § 9447 (Use of ESST), and § 9448 (Effect on Other Law or Policy) (*id.*, Ex. I at 6–7).  The arbitrator outlined the parties' arguments.  (*Id.*, Ex. I at 8–19.)

The arbitrator began his analysis by concluding that the matter was not moot.  (*Id.*, Ex. I at 23–24.)  The arbitrator next determined it had jurisdiction to hear the matter, rejecting Bimbo's argument that an arbitrator did not have jurisdiction because the grievance purportedly required the interpretation of the ESST statute.  (*Id.*, Ex. I at 24.)  The arbitrator also considered whether ESST law affected the interpretation of the CBA.  (*Id.*, Ex. I at 24.)  The arbitrator acknowledged that while "external law or other factors outside the CBA can be used to aid in the interpretation of its language, the focus is always on the CBA itself."  (*Id.*, Ex. I at 25.)  The arbitrator went on to conclude that Bimbo's action violated the CBA.  (*Id.*, Ex. I at 31.)

In reaching his conclusion, the arbitrator repeatedly emphasized that the CBA governed his decision, not the ESST statute.

- "The focus is thus always on the CBA and those external factors can be used to determine contractual intent." (*Id.*, Ex. I at 26.)

- "It must be noted that this case is decided under the terms of the CBA, which guarantees certain amounts of vacation time as set forth in Article 6. Here, the issue is whether vacation time can be required to be converted to ESST time. That requires a review of the applicable CBA provisions, which guarantee a specified amount of vacation on an agreed upon schedule. The statute was used to aid in the interpretation of that language on these unique facts." (*Id.*, Ex. I at 27.)

- "[T]he purpose behind Article 6 is to guarantee that employees have a specified number of hours of accrued vacation time. Any reduction in that, such as the Employer is attempting to do here, is a violation of that contractual language." (*Id.*, Ex. I at 28.)

- "This case does not call for the interpretation of the statute, but as discussed herein, can be used to aid in the interpretation of the CBA. The CBA governs the result in this case and the statute does not alter the terms of the CBA – in fact it re-affirms them through the clear provisions of Minn. Stat. 181.9448 Subd. 1 (b)."[3] (*Id.*, Ex. I at 30.)

---

[3] Minn. Stat. § 181.9448, subd. 1(b) provides that:

> Nothing in sections 181.9445 to 181.9448 shall be construed to limit the right of parties to a collective bargaining agreement to bargain and agree with respect to earned sick and safe time policies or to diminish the obligation of an employer to comply with any contract, collective bargaining agreement, or any employment benefit program or plan that meets or exceeds, and does not otherwise conflict with, the minimum standards and requirements provided in this section.

Bimbo dismisses the arbitrator's statements as "self-serving," arguing that these statements are contradicted by other language in the decision.  (Pl's. Opp. Mem. to Def.'s Mot. J. Pleadings ("Pl.'s Opp. Mem.") at 15, July 22, 2025, Docket No. 18.)  For instance Bimbo points to the following excerpt from the arbitration decision:

> [Minn. Stat. § 181.9448, subd. 1(e)][4] must also be read in conjunction with section (b) . . .  On these facts 181.9448, Subd. 1 section (b) applies to this situation and works to require an additional 48 hours of ESST time on this unique record.  The Employer does not provide sick and safe time under the terms of the CBA and so the clear statutory language requires 48 hours of additional ESST time.

(*Id.*, Ex. I at 27.)

### 2.    Essence from the CBA

After careful review of the arbitrator's decision, the Court concludes that it draws its essence from the CBA for two reasons.

**First**, the arbitrator focused on whether Article 6 of the CBA was violated. Although Minnesota's ESST law prompted Bimbo's policy, the policy, as construed by the arbitrator, violated Article 6 because the policy reduced the amount of vacation time a

---

[4] Minn. Stat. § 181.9448, subd. 1(e) states that:

> Employers who provide earned sick and safe time to their employees under a paid time off policy or other paid leave policy that may be used for the same purposes and under the same conditions as earned sick and safe time, and that meets or exceeds, and does not otherwise conflict with, the minimum standards and requirements provided in sections 181.9445 to 181.9448 are not required to provide additional earned sick and safe time.

bargaining unit employee was entitled to under the CBA. (*See id.*, Ex. I at 28 (emphasizing that the "purpose behind Article 6 is to guarantee that employees have a specified number of hours of accrued vacation time. Any reduction in that, such as the Employer is attempting to do here, is a violation of that **contractual language**." (emphasis added)).) The arbitrator also found that the "net effect" of the new policy was to reduce the number of hours that could be used for vacation time hours that were guaranteed **by Article 6 of the CBA**. (*Id.*, Ex. I at 27.)

**Second,** although the arbitrator referenced the ESST statute, he did so solely to interpret the CBA and to explain why his interpretation of the CBA was correct. The Eighth Circuit has made it clear that arbitrators may rely on external sources to aid in construing a CBA's language. *Keebler Co. v. Milk Drivers and Dairy Emps. Union, Loc. No. 471*, 80 F.3d 284, 288 (8th Cir. 1996) (noting that "an arbitrator may look to sources other than the collective bargaining agreement . . . to aid in his interpretation of the contract" so long as the arbitrator does not "amend the contract").

The arbitrator began his analysis without making any reference to the ESST law and stated that "[t]here is **no question** that Article 6 provides for the vacation benefits as stated in that section." (*Id.*, Ex. I at 26 (emphasis added).) The arbitrator confirmed his plain-text interpretation of Article 6 by implicitly referencing Minn. Stat. § 181.944, subd. 1(b) for the proposition that the ESST law does not "diminish contractual benefits

provided under a CBA," thereby highlighting the CBA's primacy under the ESST statute.[5]

(*Id.*)  The arbitrator then explained that § 181.9448, subd. 1(e) "did not alter the result" but confirmed his interpretation of the CBA because the bargaining unit employees' vacation hours were guaranteed by Article 6 of the CBA.[6]  (*Id.*)  Any reference to the ESST statutes did not detract from the arbitrator's central focus on interpreting the CBA.

The arbitrator then interpreted the CBA and Minn. Stat. § 181.9448, subd. 1(b) and (e) together to show that the Bimbo could comply with the CBA and the ESST law by providing 48 hours of ESST time in addition to the vacation time provided for in the CBA.[7] (*Id.*, Ex. I at 27.)

The arbitrator next referenced Minn. Stat. § 181.9448, subd. 1(b) again to explain that the obligations imposed on Bimbo by the CBA were independent from those imposed by the ESST law.  (*See id.*, Ex. I at 27 (noting that § 181.9448, subd. 1(b) "prohibits the

---

[5] As recognized by the arbitrator, because § 181.9448, subd. 1(b) states that the ESST law should not be construed to diminish an employer's obligations under the CBA, Bimbo violated the ESST law by unilaterally converting vacation time to ESST time since the policy reduced the amount of vacation time employees were otherwise entitled to under the CBA.  (*See id.*, Ex. I at 27 ("As other arbitrators cited herein have observed, allowing the conversion of contractually mandated vacation benefits to use as ESST time violates the clear provisions of the CBA and is neither allowed or sanctioned by the law itself.").)

[6] The arbitrator's statement that Minn. Stat § 181.9448, subd. 1(e) "did not alter the result" further supports the conclusion that his views of the CBA stood independent from his views of the ESST statute.

[7] The arbitrator cited other arbitration decisions, including one involving Bimbo Bakeries, that explained that the employer could comply with the ESST law without violating the CBA by providing ESST in addition to the vacation time guaranteed under the CBA.  (*Id.*, Ex. I at 26–29.)

-15-

diminution of existing CBA benefits" and that by converting vacation time that is accrued under the CBA to ESST time, the vacation time allotted in Article 6 was reduced).)  The arbitrator reasoned that Bimbo's policies had the effect of reducing the amount of vacation time employees were entitled to under the CBA.

In sum, the arbitrator focused on the policies' impact on the bargaining unit members' rights under the CBA.  Even though the arbitrator analyzed and incorporated the ESST statute to support the conclusion that Bimbo's policies violated the CBA, that conclusion was grounded in the CBA.  Because the decision was focused on the CBA and did not amend the CBA by citing the ESST law, the Court concludes that the arbitrator's award draws its essence from the CBA.

### C.     Public Policy

Bimbo also argues that the arbitration award violates the clearly defined public policy of the Minnesota ESST statute.  The Court disagrees.

If an arbitrator interprets a collective bargaining agreement in a way that violates explicit public policy, courts should "refrain from enforcing" the arbitration award. *Boehringer*, 739 F.3d at 1141 (quoting *W.R. Grace & Co. v. Loc. Union 759, Int'l Union of the United Rubber Workers of Am.*, 461 U.S. 757, 766 (1983)).  The public policy exception is "narrow," and the public policy being protected must be "well defined and dominant[.]" *Id.*  "Because collective bargaining agreements do not formulate public policy, and arbitrators cannot consider matters not encompassed by the governing agreements, 'the question of public policy is ultimately one for resolution by the courts.'" *Iowa Elec. Light*

-16-

& *Power Co. v. Loc. Union 204 of Int'l Bhd. of Elec. Workers*, 834 F.2d 1424, 1427 (8th Cir. 1987) (quoting *W.R. Grace*, 461 U.S. at 766).

Bimbo argues that the arbitration award violates well-defined public policy because the award prohibits Bimbo from allowing employees to use vacation time for ESST. Under the December 2023 policy, employees were required to use vacation time for paid ESST, whereas the October 2024 policy gave some employees ESST hours but still required other employees (those with more than 80 hours of paid time off) to use vacation time for paid ESST. Bimbo reasons that the arbitrator improperly restricted the employees' use of the paid time off to which they are entitled under the CBA.

The Court concludes that the arbitrator's award does not violate public policy. Bimbo's argument is flawed because it conflicts with the plain language of Minnesota statute. Minn. Stat. § 181.9448, subd. 1(b) makes clear that "[n]othing in sections 181.9445 to 181.9448 shall be construed . . . to diminish the obligation of an employer to comply with any contract [or] collective bargaining agreement . . . that meets or exceeds, and does not otherwise conflict with, the minimum standards and requirements provided in this section." In other words, Minnesota's ESST statute permits a CBA to impose obligations independent of, and in addition to, those imposed by the ESST law. Indeed, it appears that Bimbo could have complied with both the ESST law and the CBA by providing paid ESST in addition to the vacation time set forth in Article 6.

-17-

Taken together, the arbitrator's interpretation of the CBA does not violate any well-defined and dominant public policy; it aligns with it.

### D.      Retention of Jurisdiction

In the "Award" section, the arbitrator stated that he would "retain jurisdiction to determine any issues regarding this award." (Compl. ¶ 22, Ex. I at 32.) Bimbo argues that the arbitrator's retention of jurisdiction exceeds the authority granted to him under the CBA because it violates the functus officio doctrine.

The functus officio doctrine is a common law doctrine that bars "arbitrators from revisiting a final award after the final award has been issued." *Legion Ins. Co. v. VCW, Inc.*, 198 F.3d 718, 719 (8th Cir. 1999). Although the Eighth Circuit has previously declined to decide whether this doctrine applies to labor disputes brought under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185,[8] in other contexts the Eighth Circuit has recognized two exceptions to this doctrine—one for "mistakes evident on the face of the award" and another "for changes when the parties consent." *Id.* (citing *Loc. P-9, United Food & Com. Workers Int'l Union v. George A. Hormel & Co.*, 776 F.2d 1393, 1394 (8th Cir. 1985)).[9]

---

[8] *Loc. P-9, United Food & Com. Workers Int'l Union v. George A. Hormel & Co.*, 776 F.2d 1393, 1394, n.1 (8th Cir. 1985).

[9] One court has observed that the functus officio doctrine is "riddled with exceptions," adding that it is "hanging on by its fingernails" and that its continued existence in "labor arbitration is uncertain." *Glass, Molders, Pottery, Plastics and Allied Workers Int'l Union, AFL-CIO, CLC, Loc. 182B v. Excelsior Foundry Co.*, 56 F.3d 844, 846 (7th Cir. 1995) (collecting cases).

The Court concludes that the functus officio doctrine does not apply because the arbitrator retained jurisdiction over issues relating to only "this award." (Compl. ¶ 22, Ex. I at 32.)   In *SBC Advanced Solutions*, the district court held—and the Eighth Circuit affirmed—that the arbitrator did not violate the functus officio doctrine when it retained jurisdiction for the "specific purpose of resolving any disputes that may arise between the parties about the application or interpretation of this awarded remedy."  *SBC Advanced Sols., Inc. v. Commc'ns Workers of Am., Dist. 6*, 44 F. Supp. 3d 914, 923 (E.D. Mo. 2014), *aff'd* 794 F.3d 1020 (8th Cir. 2015).[10]   Like the arbitrator's jurisdiction-retention provision in *SBC*, the provision here, when read in context, cannot be read to permit a reexamination of the merits.  Instead, it simply allows the arbitrator to address issues related to implementing the award.  Arbitrators regularly include provisions like the one here to address issues relating to implementation of the award.  *See id.* at 925 ("[A]rbitrators frequently retain limited jurisdiction to resolve issues related to the implementation of a remedy ordered by the arbitrator, both at the request of the parties and *sua sponte.*").

---

[10] Bimbo cites the Eighth Circuit's decision in *Keebler*, arguing that the arbitrator's jurisdiction-retention language mirrors the language that justified vacatur in *Keebler*. (Pl.'s Opp. Mem. at 24–25 (citing *Keebler*, 80 F.3d at 287).) The problem with this argument is that *Keebler* neither discusses a jurisdiction-retention provision nor cites the functus officio doctrine. *Keebler* is therefore inapposite.

The Court also notes that functus officio doctrine appears to not apply to labor disputes—like the one here brought under section 301 of the Labor Management Relations Act. *See, e.g.*, *Loc. P-9, United Food & Com. Workers Int'l Union v. George A. Hormel & Co.*, 776 F.2d 1393, 1394, n.1 (8th Cir. 1985) (declining to opine on whether functus officio doctrine applies to actions brought under section 301); *Red Star Express Lines v. Int'l Bhd. of Teamsters, Loc. 170*, 809 F.2d 103, 106 (1st Cir. 1987) (acknowledging that a "labor arbitrator may, for example, 'interpret or amplify' his award, *functus officio* notwithstanding" (citation omitted)); *id.* at 108 (Brown, J., concurring); *Auto., Petroleum & Allied Indus. Emps. Union, Loc. 618 v. Sears, Roebuck &Co.*, 581 F. Supp. 672, 676 (E.D. Mo. 1984) ("[I]t is clear that the common law doctrine of *functus officio,* which states that once an arbitrator issues his/her award he/she is without authority to proceed further or to explain his/her award, does not apply to federal court enforcement of arbitration awards pursuant to § 301 of the LMRA.").

Bimbo also claims that the jurisdiction-retention provision amounts to a "self-generated permanent injunction," granting the arbitrator continuing oversight over Bimbo's compliance with the CBA. (Pl.'s Opp. Mem. at 25.) Not so. The language must be read in context. The provision applies to "issues regarding **this award**." (Compl. ¶ 22, Ex. I at 32 (emphasis added).) The award found that Bimbo's ESST policies violated Article 6 of CBA and "ordered [Bimbo] to comply with the CBA fully going forward, and to provide make-whole relief." (Compl. ¶ 22, Ex. I at 31.) In light of the arbitrator's legal conclusions

and ordered remedies, the arbitrator retained jurisdiction to merely resolve disputes related to the implementation of the remedy (e.g., whether Bimbo restored vacation benefits to affected employees or compensated employees for losses resulting from Bimbo's ESST policy.)  The provision is therefore far narrower than Bimbo suggests and does not authorize open-ended review of all alleged CBA violations.

Accordingly, the arbitrator did not exceed his authority by retaining jurisdiction over issues relating to the award.

## CONCLUSION

Bimbo seeks to vacate an arbitration award that was entered against it and in favor of the Union related to Bimbo's implementation of Minnesota's newly enacted Earned Safe and Sick Time law.  The Union moves for judgment on the pleadings, seeking to enforce the arbitration award.  The Court finds that the arbitrator did not exceed his authority, the arbitrator's decision draws its essence from the CBA, and the arbitration award does not violate public policy but is consistent with it.  The Court will, therefore, grant the Union's Motion for Judgment on the Pleadings and will dismiss the Complaint with prejudice.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1. Defendant Bakery, Confectionary, Tobacco Workers and Grain Millers Union

   Twin Cities Local 22's Motion for Judgment on the Pleadings (Docket No [11])

   is **GRANTED**.

2. Plaintiff Bimbo Bakeries USA, Inc.'s Complaint (Docket No [1]) is **DISMISSED**

   **with prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  March 30, 2026                              _____/s/ John R. Tunheim_____
at Minneapolis, Minnesota.                          JOHN R. TUNHEIM
                                                    United States District Judge